# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **iPROJECTS, LLC**, an Oregon Limited Liability Company, | Case No. 3:16-cv-1830-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SURESPAN WIND ENERGY SERVICES LTD.**, a Canadian Limited Company | |
| Defendant. | |

Paul W. Conable and Alexander M. Tinker, Tᴏɴᴋᴏɴ Tᴏʀᴘ LLP, 1600 Pioneer Tower, 888 SW Fifth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Plaintiff.

D. Gary Christensen, Alexander M. Naito, and Iván Resendiz Gutierrez, Mɪʟʟᴇʀ Nᴀsʜ Gʀᴀʜᴀᴍ & Dᴜɴɴ LLP, 111 SW Fifth Avenue, Suite 3400, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

  Plaintiff, iProjects, LLC ("iProjects"), is an Oregon limited liability company based in Portland. iProjects provides consulting services to contractors. Defendant, Surespan Wind Energy Services, Ltd. ("Surespan"), is a Canadian limited company based in North Vancouver, British Columbia, Canada. iProjects brings this lawsuit against Surespan alleging claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust

enrichment. Surespan moves to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons stated below, Surespan's motion to dismiss is denied.

## STANDARDS

When a motion to dismiss for lack of personal jurisdiction is brought under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Scher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* at 800 (quotation marks and citation omitted). In resolving the motion on written materials, the court may "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). A plaintiff cannot rest solely on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. *Id.* Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.* (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

## BACKGROUND

In February 2015, Jordan Hiebert, Surespan's Divisional Manager of Operations & Maintenance, approached David Hart, at the American Wind Energy Association's Wind Power Finance and Investment Summit in San Diego, California. Hiebert asked whether Hart was interested in potentially assisting Surespan with setting up operations in the United States.

Hiebert next met with Hart on April 16, 2015, in Portland, Oregon. Also attending this meeting from Surespan was Surespan's Chief Operations Officer, Jason Dashney. At that meeting, Hiebert and Dashney told Hart that Surespan had five projects that had failed or were failing due to operational mismanagement. Included among these projects were a wind turbine construction project in Nova Scotia, Canada (the "South Canoe Project") and a wind turbine construction project in Ontario, Canada (the "Bow Lake Project"). Hiebert and Dashney asked Hart whether he was available as a consultant to help on Surespan's projects. Hiebert and Dashney also asked Hart if he would develop a business plan for Surespan's operations in the United States, which would be based out of an office in Portland, Oregon. Hiebert and Dashney also asked Hart to help with staffing Surespan's U.S. operations. Hart agreed to help Surespan with planning and staffing Surespan's operations and to provide a business plan outline for Surespan's potential U.S. operations.

Hart submitted the business plan outline to Surespan. Surespan's President, Nigel Bester, then invited Hart to North Vancouver, British Columbia for an interview and have Hart review Surespan's projects that were complete or underway. On April 28, 2015, Hart travelled to Surespan's offices in Canada, and Surespan paid for Hart's travel expenses. Hart and Bester discussed Surespan's Bow Lake and South Canoe projects. No agreement was reached at that meeting.

On May 1, 2015, Hart provided to Bester, Dashney, and Hiebert a preliminary outline for launching Surespan's U.S. office and operations. On May 5, 2015, Hart sent Hiebert examples of the proprietary analysis tools that Hart uses to assess the feasibility and risk of renewable energy projects. On May 16, 2015, Hart sent Surespan an invoice from "iProjects" for services related to the South Canoe project.

PAGE 3 – OPINION AND ORDER

On May 17, 2015, Hart formally organized iProjects and registered it with the Oregon Secretary of State. Five days later, on May 22, 2015, Hart sent Surespan a draft South Canoe Consulting Agreement between Surespan and iProjects. Surespan and iProjects entered into the South Canoe Consulting Agreement, effective May 26, 2015 ("South Canoe Agreement"). Thereafter, iProjects sent all invoices to Surespan from Oregon, and Surespan made payments to iProjects in Oregon.

After Surespan and iProjects entered into the South Canoe Agreement, Surespan's Bester asked Hart to visit Surespan's Bow Lake project site to assess the state of the construction site and to assess Surespan's performance on the project. On June 7, 2015, Hart visited the Bow Lake site. On June 13, 2015, iProjects invoiced Surespan for services and travel expenses related to that visit.

After Hart visited the Bow Lake site, Surespan's Hiebert visited Hart in Portland, Oregon. Hiebert told Hart that Surespan wanted Hart to take on the Bow Lake Project as well. Through telephone calls and email, iProjects and Surespan negotiated and entered into the Bow Lake Consulting Agreement, effective June 19, 2015 ("Bow Lake Agreement").

Both the South Canoe Agreement and the Bow Lake Agreement provide, at Section 3.1(b):

> The Consultant acknowledges that the Services are performed in the USA, with occasional visits to the Company's offices in Canada for the purpose of meetings. The Consultant is responsible for all sales and income taxes and duties payable in respect of the fees or the Services, and indemnifies the Company from any liability in respect of sales and income taxes and duties.

ECF 14-6 at 2; ECF 14-9 at 2. These provisions were included at the request of Surespan for tax or other financial reasons to confirm that iProjects was not performing services in Canada. In

PAGE 4 – OPINION AND ORDER

addition, both the South Canoe Agreement and the Bow Lake Agreement provide, at Section 7.11:

> Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Oregon, USA.

ECF 14-6 at 6; ECF 14-9 at 6.

## DISCUSSION

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L)); *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 657 P.2d 211, 212 (Or. 1982). Thus, this Court need only determine whether its exercise of personal jurisdiction over Surespan would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015; *see also Hydraulic Servocontrols*, 657 P.2d at 212.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id.* at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

PAGE 5 – OPINION AND ORDER

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic," even if those contacts are wholly unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King*, 471 U.S. at 472-74.

The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden as to the first two parts, but if both are established, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802).

**1. Purposeful Availment of the Privilege of Doing Business in Oregon**

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012); *Brayton Purcell*, 606 F.3d at 1128. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). The purposeful availment analysis is the appropriate test here because iProjects alleges claims sounding in contract.

In cases involving contractual obligations, the Supreme Court emphasizes "the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (quotation marks and citations omitted). The court's review of the contractual relationship must be "practical and pragmatic." *Boschetto*, 539 F.3d at 1016. For example, parties to an interstate contract who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quotation marks and citation omitted). This continuing relationship must create a "substantial connection" between the defendant and the forum state that is more than merely "random, fortuitous or attenuated." *Id*. at 479-80.

It is the defendant's activities that inform the purposeful availment analysis. *Boschetto*, 539 F.3d at 1016 ("To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.") (quotation marks and citation omitted); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (noting that the relationship

PAGE 7 – OPINION AND ORDER

with the forum must arise out of contacts that the "defendant *himself*" creates with the forum) (quoting *Burger King,* 471 U.S. at 475). A court should consider four factors in determining whether the defendant has purposefully availed itself of the privilege of doing business in the forum: (1) prior negotiations; (2) contemplated future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealing. *Burger King*, 471 U.S. at 479. These factors weigh in favor of finding jurisdiction.[1]

### a. Prior Negotiations

After first meeting Hart in California, Surespan solicited iProjects's services in Oregon. Hiebert and Dashney travelled to Portland to discuss iProjects working with Surespan on the South Canoe and Bow Lake projects. They also discussed in Oregon iProjects helping Surespan open, operate, and staff U.S. operations from an office in Portland, Oregon. In addition, the Bow Lake Agreement was entered into electronically, with Hart agreeing on behalf of iProjects from its Portland office.

### b. Future Consequences

Both the South Canoe Agreement and the Bow Lake Agreement provided, at the insistence of Surespan, that "[t]he Consultant [*i.e.*, iProjects] acknowledges that the Services are performed in the USA, with occasional visits to the Company's [*i.e.*, Surespan's] offices in Canada for the purpose of meetings." Thus, the parties agreed and anticipated that iProjects would be performing its services primarily at its offices in Portland, Oregon. The Court recognizes that "the fact that a contract envisions one party discharging his obligations in the

---

[1] Surespan argues that none of its activities and only iProjects's activities involve Oregon. Surespan relies on *Walden v. Fiore*, 134 S. Ct. 1115 (2014), to support its argument that these contacts are insufficient to establish jurisdiction. Because this motion is resolved on the briefs, any conflicting evidence contained in the affidavits is resolved in favor of iProjects. The Court thus focuses on Surespan's own activities and finds that personal jurisdiction is appropriate. *See Walden*, 134 S. Ct. at 1122.

PAGE 8 – OPINION AND ORDER

forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015). Here, however, iProjects does not rely on this factor alone.

### c. Terms of the Contract

When Surespan requested that each contract between Surespan and iProjects expressly restrict iProjects's performance to the United States, Surespan "entered into a relationship that 'envisioned continuing and wide-reaching contacts'" with iProjects in Oregon. *Roth*, 942 F.2d at 622 (quoting *Burger King*, 471 U.S. at 480). When Surespan negotiated and entered into these contracts, it knew that iProjects was an Oregon LLC and its manager and sole owner (Hart) was an Oregon resident.

It is also significant that the parties agreed that their agreements would be governed by Oregon law. *See Burger King*, 471 U.S. at 482 ("Although [the choice-of-law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

### d. Actual Course of Dealing

As specified in the parties' agreements, iProjects actually performed the majority of its consulting work in Oregon. In addition, Surespan sent payments and communications to iProjects in Oregon. Although these facts, standing alone, are insufficient to establish minimum contacts, they are not irrelevant. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1130-31 (9th Cir. 2003) (finding that the defendant's regular communications with the plaintiff "via phone, fax and mail respecting" the contract at issue "over a five-year period" supported the conclusion that the defendant had purposefully availed itself of the forum).

Further, the cases on which Surespan relies are distinguishable. None of these cases involved a contractual provision that required the plaintiff to perform outside of the defendant's home jurisdiction or in the plaintiff's home country. *See, e.g.*, *HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 666 (9th Cir. 2011) (finding no jurisdiction in California when the contract was signed in China, written in Chinese, and there was a "lack of any indicia of a calculated effort by the defendant to conduct business in California."). In summary, the prior negotiations, future consequences, terms of the contract, and actual course of dealing all support a finding of purposeful availment.

### 2. Arising Out of Or Relating to Contacts with Oregon

Surespan's contacts with Oregon are related to the South Canoe Agreement or the Bow Lake Agreement, which are the specific subjects of this action. Accordingly, this requirement of specific jurisdiction is satisfied. *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914-15 (9th Cir. 1990); *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789-90 (9th Cir. 1987); *Adidas Am., Inc. v. Herbalife Int'l, Inc.*, 2010 WL 596584, at *4 (D. Or. Feb. 12, 2010).

### 3. Reasonable and Fair to Assert Jurisdiction

When the first two requirements are met, as they are here, a strong presumption of personal jurisdiction exists. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Surespan, then, "must 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477) (emphasis added in *Ballard*). Jurisdiction is unreasonable if it does not comport with the notion of fair play and substantial justice. *Burger King*, 471 U.S. at 476. The Ninth Circuit uses seven specific factors to determine whether an exercise of jurisdiction is reasonable:

PAGE 10 – OPINION AND ORDER

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters*, 223 F.3d at 1088 (citation omitted). On balance, these factors do not overcome the presumption in favor of personal jurisdiction in this case.

### a. Purposeful Interjection

Surespan's purposeful interjection into the forum state included soliciting iProjects in Oregon. Surespan also made a specific request that performance of the contracts take place primarily in the United States. Further, Surespan anticipated and knew that performance would take place in Oregon.

### b. Burden on Defendant

Any burden Surespan faces from litigating in a foreign court is diminished by evidence that its representatives travelled to Oregon to negotiate the contracts. It is also diminished by the fact that both the South Canoe Agreement and the Bow Lake Agreement specified that Oregon law would govern any disputes. *See Burger King*, 471 U.S. at 482 (explaining that a choice-of-law provision reinforces a defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").

### c. Conflict with Sovereignty of Defendant's State

Canada's sovereignty will not likely be affronted if Surespan is called into court in Oregon because Surespan specifically requested that the relevant contracts be performed in the United States and agreed that Oregon law would govern any disputes. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) ("In determining how much weight to give

PAGE 11 – OPINION AND ORDER

this factor, we have focused on the presence or absence of connections to the United States in general, not just to the forum state."); *see also Roth*, 942 F.2d at 623-24 (explaining that "unless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction," even when the defendants did not speak English and the plaintiff had entered their home forums to solicit them).

### d. Forum's Interest in Adjudication

Oregon has an interest in this litigation because it involves a dispute between a foreign corporation and an Oregon limited liability company concerning a contract primarily performed in Oregon. In addition, the contract specifies that Oregon law would govern the resolution of any disputes.

### e. Efficient Resolution

Considering the location of evidence and witnesses, judicial efficiency weighs somewhat against exercising jurisdiction. *Harris Rutsky*, 328 F.3d at 1133. iProjects provides evidence only that its third-party witnesses are "U.S.-based," while Surespan submits that its employees and third-party witnesses are located primarily in Canada. Surespan has more employees who may need to travel to Oregon for trial than iProjects has who would need to travel to Canada if the dispute were heard there. In addition, Surespan submits evidence that most of its third-party witnesses also are located in Canada.

### f. Plaintiff's Convenience

The current forum is more convenient for Plaintiff. It also allows for effective relief.

### g. Existence of Alternative Forum

An alternative forum exists in Canada. The existence of an alternative forum, however, only becomes an issue "when the [original] forum state is shown to be unreasonable." *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (quoting *Bauman*

PAGE 12 – OPINION AND ORDER

*v. DaimlerChrysler Corp.*, 644 F.3d 909, 929 n.19 (9th Cir. 2011), *overruled on other grounds by Daimler AG*, 134 S. Ct. 746, (2014)). That is not the case here.

Only one of the seven factors weighs against a finding of personal jurisdiction. Because "[n]o one of the factors is dispositive in itself," Surespan has not presented a compelling case sufficient to overcome the presumption that personal jurisdiction exists. *See Harris Rutsky*, 328 F.3d at 1132.[2]

## CONCLUSION

Defendant Surespan's Motion to Dismiss Based on Lack of Personal Jurisdiction (ECF 6) is DENIED.

**IT IS SO ORDERED**.

DATED this 16th day of March, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[2] The Court does not believe that oral argument is needed or will be helpful.